# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# (ASHEVILLE DIVISION)

**Case No. 1:26-CV-** _118 - MOC - WCM_

FILED
ASHEVILLE, NC

MAY 0 1 2026

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

**FRANKLIN T. SCOTT,**

*Plaintiff,*

**v.**

**BRIDGECREST ACCEPTANCE CORP.**

*Defendant.*

## VERIFIED FEDERAL COMPLAINT (NON-PRISONER) VIOLATIONS OF THE FAIR CREDIT REPORTING ACT— CONVERSION—UNLAWFUL REPOSSESSION—CREDIT DEFAMATION—UNFAIR & DECEPTIVE TRADE PRACTICES

**(JURY TRIAL DEMANDED)**

**NOW COMES** the **Plaintiff, Franklin T. Scott, appearing *Pro Se*,** and

complaining of the **Defendant, Bridgecrest Acceptance Corp,** *alleges as follows:*

Case 1:26-cv-00118-MOC-WCM     Document 1     Filed 05/01/26     Page 1 of 15

**D. AWARD TREBLE DAMAGES** pursuant to *N.C.G.S. § 75-16* for **Unfair and Deceptive Trade Practices.**

**E. AWARD PUNITIVE DAMAGES** pursuant to *The Fair Credit Reporting Act and N.C.G.S. § 1D-15* for **Willful Malice And Wanton Disregard Of Plaintiff's Rights.**

**F. Grant Equitable Discharge of Debt,** *ordering the total cancellation of the 2017 Buick Envision loan (Account No. 200372491001), release of the lien, and transfer of the title to Plaintiff as restitution.*

**G. ORDER AN INJUNCTION** Commanding Bridgecrest Acceptance Corp. Immediately Delete All Derogatory Credit Reporting Information Filed With All Credit Bureaus **(That Is Linked To Both Predatory Vehicular Loans).**

**H. GRANT** *Such Other Relief* As The Court Deems *Just And Proper.*

Respectfully submitted, this the 1ST day of May, 2026.

Franklin T. Scott, Plaintiff *Pro Se*

General Delivery

Asheville, NC 28803

frankie.t.scott@outlook.com

# VI. VERIFICATION

I declare under penalty of perjury, under the laws of the United States of America *(28 U.S.C. § 1746)* that the factual allegations contained within this Verified Complaint are true and correct to the best of my personal knowledge.

*I further declare, to the best of my knowledge and ability, that while generative AI tools were utilized for specific fact-finding research, formatting, and grammar/spelling refinement, all factual allegations and statutory citations have been independently verified for accuracy, and declare this Complaint to be in complete and full compliance with all Federal Civil Rules of Litigation, Local Civil Rules for the WDNC, and Standing Orders of the Court.*

Executed this 1st day of April, 2026, in Buncombe County, North Carolina.

**Franklin T. Scott, Plaintiff** *Pro Se*

*frankie.t.scott@outlook.com*

# I. PARTIES

**1. Plaintiff Franklin T. Scott is a resident of Buncombe County, North Carolina, an ADA Protected 100% Service-Connected Disabled Combat Veteran of the United States Armed Forces.**

**2. Defendant Bridgecrest Acceptance Corp.** *(aka Bridgecrest Credit Company LLC),* is a **foreign corporation** doing business in North Carolina and acts as a "furnisher" of information under the **Fair Credit Reporting Act** *(15 U.S.C. § 1681 et seq).* **Bridgecrest Acceptance Corp, mainly provides financing for auto loans nationwide for** *Carvana.com* **and Service the Loans throughout.**

# II. JURISDICTION AND VENUE

**3. *Federal Question Jurisdiction:*** This Court has original subject matter jurisdiction over this action pursuant to ***28 U.S.C. § 1331,*** as this action arises under the ***Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681.***

**4. Diversity Jurisdiction:** This Court concurrently holds jurisdiction pursuant to ***28 U.S.C. § 1332,*** as complete diversity of citizenship exists between the Plaintiff (NC) and Defendant, and the amount in controversy, **including statutory**

treble and punitive damages, *substantially exceeds $75,000.00,* exclusive of interest and costs.

**5. Supplemental Jurisdiction:** This Court has supplemental jurisdiction over the Plaintiff's state law tort and statutory claims pursuant to *28 U.S.C. § 1367(a),* as those claims form part of the same case or controversy.

**6. Venue: Is Proper in the Western District of North Carolina** pursuant to. *28 U.S.C. § 1391(b),* as a substantial part of the events giving rise to the claims occurred in **Buncombe County, North Carolina.**

# III. STATEMENT OF FACTS

## A. The Accident, The Impound, and The Denial of Access

7. On **March 7, 2024,** Plaintiff was involved in a life-threatening motor vehicle accident caused by an acute medical episode related to his service-connected disabilities (PTSD).

8. **Plaintiff's 2016 Mercedes Benz C-Class (VIN: 55SWF4JB7GU176764) was towed to a strict police impound lot**, after having been erroneously charged with DWI, while in an ACTIVE Dissociative Flashback Episode, triggered by the accident involving a 50 foot drop, coming to rest inverted in a creek, where

extraction by EMS/Fire personnel was required. (It is common for law enforcement to mistake a triggered Dissociative Episode as Intoxication, despite no trace of alcohol/drugs). Therefore, the vehicle was recovered and towed; having technically been impounded while involved in the "commission of a crime", **automatically requiring anyone picking up the vehicle, to get a Court Order releasing it.** ***At the time of the incident, the loan (Account No. ending in 0801) was in CURRENT, paid as agreed status, with zero reported late payments.***

9. Plaintiff maintained phone contact with the tow yard, advising them he would pay the storage fees as soon as his funds arrived. Despite this contact, the police impound yard unlawfully denied Plaintiff physical access to the vehicle to retrieve his personal belongings, which included approximately $1,100.00 worth of property, including a $300.00 pair of customized prescription Nike sunglasses.

10. The impound yard, solely concerned with collecting their fees and unwilling to wait for Plaintiff's funds, contacted Defendant Bridgecrest. Upon information and belief, the yard falsely conveyed that Plaintiff was unresponsive to expedite their payout. When Plaintiff tried requesting actual location of tow yard, the attendant would not give the address out, stating the fees must be paid in advance, effectively holding personal belongings hostage.

## B. The Illegal Seizure and Extortion

11. Capitalizing on this communication, Defendant unlawfully seized the vehicle from the police impound lot. **In its subsequent response to the CFPB, Defendant attempted to justify this seizure by citing boilerplate contractual clauses claiming a need to "protect their collateral."**

12. However, Defendant's seizure was a blatant, illegal circumvention of state law. Under **N.C.G.S. § 25-9-609**, the right to take possession of collateral is strictly predicated upon an actual default, which did not exist. Furthermore, Defendant explicitly bypassed the strict judicial requirements of **N.C.G.S. § 20-28.3**, failing to obtain the mandatory release order from the Clerk of Superior Court or a presiding Judge required to legally extract a vehicle from a police impound.

13. **On April 9, 2024, Plaintiff satisfied the lien in full with a lump-sum payment of $21,759.78.** At the time of payment, Plaintiff fully believed the vehicle was still locally stored and would be available upon satisfying the tow/storage fees. **Had Plaintiff known that Defendant secretly seized the vehicle mere hours prior, the lump sum would not have been paid.** Instead, Plaintiff would have worked with Defendant to pay their reinstatement offer and continue payments accordingly. **However, due to Defendant's calculated**

**deception, Plaintiff exhausted all personal resources, effectively depriving him of his life savings, for no reason or reward.**

14. Notwithstanding the $0.00 balance, Defendant issued a "Notice of Disposition" on April 22, 2024, demanding a fabricated $2,765.00 (See Exhibit A) ransom as a condition for the return of the property.

15. Upon Plaintiff's refusal to submit to this extortion, Defendant sold the fully-owned vehicle at auction approximately 20 days after payoff, with NO DEFAULT ever having been recorded. Defendant maliciously retained 100% of the auction surplus and entirely failed to return or provide a mechanism for the retrieval of Plaintiff's $1,100.00 in personal property, effectively stealing it.

## C. The Simple Demand, Refusal, and Exhaustion of Remedies

16. **Plaintiff's initial demand to Defendant** was incredibly simple and offered in good faith: Defendant merely needed to retroactively **correct the credit reporting to reflect the truth—that the account was "Paid in Full," "Never Late," and "Closed."** This was requested solely so Plaintiff could proceed with securing an active VA Home Loan (See Exhibit B).

17. Defendant maliciously refused this simple cure. Over the following year, Plaintiff exhausted all administrative remedies, initiating two (2) separate

investigations through the **Consumer Financial Protection Bureau (CFPB)(See Exhibit C) and filing a formal complaint with the North Carolina Attorney General's Office (File No. CP-26-03470)(See Exhibit D).**

18. Furthermore, Plaintiff served Defendant with two (2) separate Certified Letters of Intent to Sue, explicitly warning them of the statutory violations. **Defendant signed for these legal demands, replied through U.S. Mail only to assert the same position as before, and never once mentioned the need/desire to initiate arbitration. By willfully failing to initiate or request arbitration during the pre-litigation phase, Defendant has acted inconsistently with any existing arbitration agreement and has effectively waived its right to compel arbitration.**

## D. The Predatory Debt Trap

19. Defendant's refusal to delete the derogatory reporting, directly contributed to destroying Plaintiff's credit profile and actively sabotaged his VA home loan eligibility.

20. In October 2024, Hurricane Helene destroyed the Plaintiff's remaining vehicle. With credit ruined by Defendant's malicious and unnecessary reporting, Plaintiff was left with no financing options.

21. On June 2, 2025, Defendant capitalized on the exact financial ruin it had manufactured. Exploiting Plaintiff's vulnerability, Defendant underwrote a new loan for a 2017 Buick Envision at a predatory 27.9% APR. As of February 25, 2026, the 10-day payoff balance is $17,785.20 (See Exhibit E).

22. All actions described herein are not targeted at Plaintiff, but is the actual Corporate Philosophy of the predatory lenders use on a daily basis, and with whomever they can charge it too, evidenced by:

   a. Conducting a superficial, bad-faith investigation into the disputed "Paid-After Repossession" status that deliberately ignored controlling state law regarding lawful repossession;

   b. Intentionally disregarding the clear documentary evidence provided by the CRAs and the Plaintiff, including the undisputed $0.00 payoff balance; and

   c. Maliciously verifying the materially false information as "accurate" to the CRAs instead of lawfully correcting or deleting the derogatory reporting.

   d. Willfully maintained fabricated derogatory credit reporting, reflecting a systemic, predatory business practice designed to trap consumers with artificially suppressed credit scores; and

e. Exploited Plaintiff's resulting financial vulnerability to underwrite a subsequent predatory loan, directly profiting from the exact credit damage Defendant caused.

f. Willfully maintained fabricated derogatory credit reporting, reflecting a systemic, predatory business practice designed to trap consumers with artificially suppressed credit scores.

## IV. CAUSES OF ACTION

23. *Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.*

## COUNT 1: Violation of the Fair Credit Reporting Act

## (15 U.S.C. § 1681s-2(b))

24. Defendant, acting as a **"furnisher of information,"** willfully *violated* *15 U.S.C. § 1681s-2(b)* by conducting *bad-faith investigations and maliciously verifying fabricated and derogatory data* to Consumer Reporting Agencies despite possessing absolute proof of a $0.00 balance.

25. These **willful violations** directly resulted in the severe **degradation of Plaintiff's creditworthiness and directly forced Plaintiff into yet another predatory loan. Because Defendant's own fabricated reporting ensured they**

were the sole lender willing to offer approval, Plaintiff was left with absolutely no other option.

## COUNT 2: Unfair and Deceptive Trade Practices (N.C.G.S. § 75-1.1)

26. **Defendant's actions**—specifically the **unlawful seizure of a fully-owned vehicle**, the malicious extortion of fees, and the deliberate fabrication of derogatory credit to force Plaintiff, and Consumers in general, into a subprime loan—constitute egregious **Unfair and Deceptive Trade Practices** pursuant to *N.C.G.S. § 75-1.1*.

27. Even if Defendant had no underlying intention to force return business through credit suppression, Defendant's defiant and deliberate indifference to the desperate pleas of a loyal, four-time returning customer—who is also a disabled combat veteran—independently constitutes egregious Unfair and Deceptive Trade Practices.

28. This coordinated, unlawful behavior easily satisfies the legal standard of conduct that is *"immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers,"* in accordance with the precedent established by the *North Carolina Supreme Court.*

29. This bad faith is further evidenced by Bridgecrest's arrogant and incessant refusal to admit wrong-doing—and **simply delete the derogatory credit reporting** (April and May 2024), prior to litigation.

# COUNT 3: Conversion and Unjust Enrichment
# (U.S. Common Law & *N.C.G.S. § 1-538.2*)

**30. Defendant intentionally implemented "unlawful dominion" over Plaintiff's property by assuming and exercising the right of ownership without legal authority.** This converted property included the 2016 Mercedes C-300 and several essential personal effects: **prescription Nike designer sunglasses ($360),** name-brand apparel, a pair of Nike Air270 shoes ($160), and approximately $250-$300 worth of gear for Plaintiff's service animal—**including a one-of-a-kind, custom-stitched POW/MIA service vest bearing the name KODA.**

31. Irrespective of the actual auction price/profits, **retaining even a single dollar in profit from the sale of a fully-owned vehicle constitutes conversion and unjust enrichment, and is in blatant *violation of state and federal law.***

# COUNT 4: Intentional Infliction of Emotional Distress (IIED)

**32. Defendant's extreme and outrageous conduct—specifically executing a targeted "Debt Trap" to steal a 100% disabled veteran's fully-paid vehicle**

and destroy his credit while he actively recovered from a catastrophic medical emergency and a natural disaster—exceeds all bounds of decency tolerated by society.

33. Defendant acted with intentional and reckless disregard for Plaintiff's highly vulnerable state, directly inflicting severe and documented psychological distress and trauma.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands a TRIAL BY JURY on all issues so triable, and prays that this Court:

A. **AWARD ACTUAL PROPERTY LOSS of $33,509.78** (comprising the $21,759.78 lien payoff plus the $11,750.00 value of the Mercedes)

B. **ORDER** all proceeds received from the auction of private property **RETURNED AND PAID TO PLAINTIFF,** or if the property is not retrievable, **ORDER THE EQUIVALENT VALUE OF ITEMS BE PAID IMMEDIATELY.**

C. **AWARD ADMINISTRATIVE LABOR, LOST PERSONAL/PROFESSIONAL TIME, COST OF SUPPLIES, RESEARCHING COSTS,** etc. at a conservative amount of $2,500.00 or Maximum of $5,500.00.

REAR COVER PAGE:

**VERIFIED FEDERAL COMPLAINT (NON-PRISONER) VIOLATIONS OF THE FAIR CREDIT REPORTING ACT— CONVERSION—UNLAWFUL REPOSSESSION—CREDIT DEFAMATION—UNFAIR & DECEPTIVE TRADE PRACTICES**

Mr. Franklin T. Scott

v.

BRIDGECREST ACCEPTANCE CORP.

CASE NO. 1:26-CV-\_\_\_--\_\_\_-\_\_\_

FILED IN THE WESTERN DISTRICT OF NORTH CAROLINA

UNITED STATES DISTRICT COURT DIVISION

ASHEVILLE DIVISION